COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ATWELL, LLC, | § | No. 08-23-00029-CV |
| Appellant, | § | Appeal from |
| v. | § | 407th Judicial District Court |
| DCP OPERATING COMPANY, LP, and DCP SAND HILLS PIPELINE, LLC, | § | of Bexar County, Texas |
| | § | (TC# 2018-CI-22638) |
| Appellees. | | |

## MEMORANDUM OPINION

This is an interlocutory appeal from an order denying a motion to dismiss under Chapter 150 of the Texas Civil Practice and Remedies Code, which requires that a sworn "certificate of merit" accompany a plaintiff's claim for damages "arising out of the provision of professional services by a licensed or registered professional" named in the statute.[1] *Levinson Alcoser Associates, L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487, 489 (Tex. 2017) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001(1–a), .002(a)). The certificate must be from a similarly licensed professional who meets certain statutory criteria and can attest to the merit of the underlying claim. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a), (b)).

Appellees DCP Operating Company, LP and DCP Sand Hills Pipeline, LLC (collectively, DCP) attached a certificate of merit from a professional engineer to their complaint against

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Accordingly, we follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

Appellant Atwell, LLC. However, Atwell contends DCP's claims arise from the provision of allegedly deficient land surveying as well as engineering work, such that DCP was required to also include a certificate of merit from a professional land surveyor to support its claims. Atwell sought dismissal on those grounds, but the trial court denied the motion. Because DCP's pleadings confirm that its claims arise from the provision of engineering services, not land surveying services, we affirm.

## BACKGROUND

This case involves a pipeline explosion on November 10, 2018, near Sonora, Texas. The explosion occurred while an excavator conducting trenching activities for construction of a new pipeline for EPIC Y-Grade Pipeline, LP struck an existing natural gas pipeline owned by DCP. Two lawsuits followed (and were later consolidated): one, a personal injury suit brought by the two excavators present during the explosion (which is not relevant to this appeal), and one asserting, among other things, negligence claims brought by DCP against EPIC and its subcontractors, including Atwell (which forms the basis for this appeal).

Atwell is a registered professional engineering, surveying, and landscape architecture firm. DCP first named Atwell a defendant in its second amended petition, in which it alleged that EPIC retained Atwell to provide "engineering, surveying and staking services" for the new pipeline. DCP asserted two general complaints about Atwell's performance. First, DCP alleged that Atwell failed to design EPIC's pipeline to avoid unnecessary crossings with DCP's pipeline and adequately notate the crossing between the two pipelines on the alignment sheets, which "failed to adequately protect [DCP's] pipeline from line strike." Second, DCP alleged that EPIC engaged Atwell "to provide surveying services" for the new pipeline, but Atwell failed to stake any pipeline crossings, including between the new pipeline and DCP's existing pipeline. DCP stated this is contrary to "industry standard," which "required surveyors to mark with stakes any anticipated

2

crossings between EPIC's pipeline and any foreign underground lines." In sum, DCP asserted that Atwell's negligence proximately caused damage to its pipeline, for which it sought damages.

In support of its allegations against Atwell, DCP appended a certificate of merit by Doug Amonsen, P.E. Mr. Amonsen holds a bachelor's degree in mechanical engineering and claims over 20 years of experience in the engineering field and industry. The certificate of merit describes Mr. Amonsen's expertise in engineering and experience in, among other things, "design, research, consultant management, project management, and investigative experience in the planning and constructions phases of pipeline projects similar to EPIC's Project."

Mr. Amonsen attested that he was retained by DCP to provide opinions related to Atwell's performance. After reviewing project documents, Mr. Amonsen concluded that, in his professional engineering opinion, "Atwell negligently designed EPIC's line by calling for EPIC's line to cross and overlay over DCP's existing line" at two locations and Atwell's "omission of any notation or other indication in the alignment sheet to advise and alert the contractor Pumpco to bore under DCP's line or [use horizontal directional drilling] breached the engineer's professional standard of care." Mr. Amonsen also concluded that "Atwell's failure to include any warning to EPIC and its contractors about the close proximity of EPIC's proposed pipeline with DCP's existing pipeline breached the engineer's professional standard of care." Though Mr. Amonsen noted his affidavit was "not intended as an all-inclusive list" of Atwell's negligence, he stated "it identifies significant material causes of damages arising from Atwell's negligent acts, errors, omissions or breaches of the standard of care and is thus solely intended to comply with the requirement for a Certificate of Merit under Texas law."

Atwell filed a motion to dismiss under Chapter 150 of the Texas Civil Practice and Remedies Code. Atwell contended that while DCP claims it performed "deficient surveying work," it failed to provide a certificate of merit from a registered professional land surveyor but

instead attempted to rely on Mr. Amonsen's—i.e., a professional engineer's—certificate. Because DCP did not file a certificate of merit from a licensed land surveyor with its petition, Atwell sought dismissal of DCP's surveying negligence claims.

DCP responded, and the trial court held a hearing on the motion to dismiss, which it denied. Atwell brought this interlocutory accelerated appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(f).

## STANDARD OF REVIEW

We review the denial of a § 150.002 motion to dismiss for abuse of discretion. *Bruington Eng'g Ltd. v. Pedernal Energy L.L.C.*, 403 S.W.3d 523, 526 (Tex. App.—San Antonio 2013, no pet.). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Dalmex, Ltd. v. Apparel Enters., Inc.*, 455 S.W.3d 241, 243 (Tex. App.—El Paso, 2015 no pet.) (quoting *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)).

"If, as here, resolution of the issue requires us to construe statutory language, we employ a de novo standard of review." *Bruington Eng'g*, 403 S.W.3d at 526 (citing *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)). In construing a statute, our goal is "to determine and give effect to the Legislature's intent." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). Thus, "we construe the Legislature's chosen words and phrases within the context and framework of the statute as a whole, not in isolation." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021). To that end, "[w]e apply the plain meaning of statutory language unless (1) the Legislature has prescribed definitions, (2) the words have acquired a technical or particular meaning, (3) a contrary intention is apparent from the context, or (4) a plain-meaning construction leads to nonsensical or absurd results." *Id.* Once we determine the statute's proper construction under a de novo standard, we then determine if the trial court abused its discretion in applying the

statute. *Bruington Eng'g*, 403 S.W.3d at 526 (citing *Hardy v. Matter*, 350 S.W.3d 329, 331 (Tex. App.—San Antonio 2011, pet. dism'd)).

## ANALYSIS

Atwell argues the trial court erred in refusing to dismiss DCP's claims under Chapter 150 because Texas law requires a certificate of merit from a professional land surveyor to support claims arising from negligence in surveying, thus the engineer's certificate of merit provided by DCP was insufficient to meet the statutory requirements. Atwell also maintains it did not waive its statutory dismissal right by waiting 15 months (and until eight months before trial) before filing its Chapter 150 motion to dismiss. Finally, Atwell contends that because § 150.002's dismissal language is mandatory, and the statute of limitations for DCP's claims has since expired (making dismissal without prejudice and subsequent refiling futile), this Court should order the trial court to dismiss DCP's claims with prejudice.

DCP responds that its claims implicate Atwell's negligence in performing engineering and engineering survey work. Thus, Mr. Amonsen's certificate of merit meets the statutory requirements, as Mr. Amonsen has experience in both engineering and engineering surveying, and he addressed the purported deficiencies in Atwell's performance of engineering and engineering surveying in his affidavit. DCP maintains that the trial court's denial of Atwell's motion to dismiss can be upheld on multiple grounds, including that the court could have concluded that DCP's claims fall within the statutory definitions for the practice of engineering and engineering surveying, such that a certificate of merit from an engineer is sufficient to address those claims. DCP also contends its certificate of merit met the requisite threshold of showing its claims are not frivolous, as did the certificates of merit appended to the personal-injury plaintiffs' petition.[2] DCP

---

[2] Again, these plaintiffs are not parties in this appeal. However, as DCP notes, they included a certificate of merit from a licensed surveyor in addition to certificates of merit by professional engineers. But DCP has not pointed us to anywhere in the record in which it incorporated the personal-injury plaintiffs' licensed surveyor's certificate of merit

further argues that the trial court could have determined Atwell waived its right to complain about a purportedly inadequate certificate of merit by waiting 15 months before filing its motion to dismiss (and participating in discovery in the meantime). Finally, DCP urges that even if this Court agrees with Atwell's position, only the surveying claims—and not all claims against Atwell—should be dismissed.

Chapter 150 of the Texas Civil Practice and Remedies Code "applies to any action or arbitration proceeding for damages arising out of the provision of professional services by architects, engineers, land surveyors, and landscape architects, as well as the firms in which they practice." *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 889–90 (Tex. 2017) (quoting TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.001(1–c), .002(a)). "It requires that a certificate of merit accompany the initiation of a lawsuit against these named design professionals." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)). A certificate of merit is an affidavit from a third-party licensed professional who is competent to testify, holds the same professional license or registration as the defendant, and practices in the area of the defendant's practice, and offers testimony based on his knowledge, skill, experience, education, training, and practice. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a).

The certificate of merit must "set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim." *Bruington Eng'g*, 403 S.W.3d at 526 (quoting TEX. CIV. PRAC. & REM.

---

by reference. Even assuming Chapter 150 permits incorporation by reference, DCP has not incorporated by reference this certificate of merit here. *See Thompson Hancock Witte & Assocs., Inc. v. Stanley Spurling & Hamilton, Inc.*, 650 S.W.3d 741, 747–48 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("Even if we assume that incorporation by reference was allowed by the revised certificate of merit statute, we conclude that Thompson Hancock did not incorporate a certificate of merit by reference here.").

CODE ANN. § 150.002(b)). However, a certificate of merit "need not recite the applicable standard of care and how it was allegedly violated in order to provide an adequate factual basis for the identification of professional errors." *CBM Engineers, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "The certificate-of-merit requirement is a substantive hurdle that helps ensure frivolous claims are expeditiously discharged." *LaLonde v. Gosnell*, 593 S.W.3d 212, 216 (Tex. 2019); *see Bruington Eng'g*, 403 S.W.3d at 527. To that end, a plaintiff's "failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant," and "[t]his dismissal may be with prejudice." TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(e).

Resolving a certificate-of-merit dispute generally requires courts to consider two threshold questions: (1) whether the defendant is a licensed or registered professional; and (2) whether the damages sought arise out of the provision of these professional services by the defendant. *Whitaker v. R2M Eng'g, LLC*, 603 S.W.3d 530, 533 (Tex. App.—Amarillo 2020, pet. denied) (citing *Jennings, Hackler & Partners, Inc. v. N. Tex. Mun. Water Dist.*, 471 S.W.3d 577, 581 (Tex. App.—Dallas 2015, pet. denied)). Here, the parties agree that Atwell is a licensed engineering firm, DCP's purported damages—at least in part—arise out of Atwell's provision of its professional engineering services, and Mr. Amonsen is a professional engineer. It is also undisputed that Atwell is a registered land surveying firm and Mr. Amonsen is not a registered professional land surveyor. Thus, the first question is not at issue; our analysis instead turns on whether DCP's claims "arise out of" the provision of professional surveying services such that it was required to file a certificate of merit from a licensed professional land surveyor. *See Jennings*, 471 S.W.3d at 581 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)).

Chapter 150 incorporates the following definition of the "practice of engineering" from Texas Occupations Code Chapter 1001:

"[P]ractice of engineering" means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work.

TEX. CIV. PRAC. & REM. CODE ANN. § 150.001(3); TEX. OCC. CODE ANN. § 1001.003(b).

Occupations Code § 1001.003(c) further states that the practice of engineering includes:

(1) consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping;

(2) design, conceptual design, or conceptual design coordination of engineering works or systems;

(3) development or optimization of plans and specifications for engineering works or systems;

(4) planning the use or alteration of land or water or the design or analysis of works or systems for the use or alteration of land or water;

(5) responsible charge of engineering teaching or the teaching of engineering;

(6) performing an engineering survey or study;

(7) engineering for construction, alteration, or repair of real property;

(8) engineering for preparation of an operating or maintenance manual;

(9) engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications;

(10) a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature;

(11) providing an engineering opinion or analysis related to a certificate of merit under Chapter 150, Civil Practice and Remedies Code; or

(12) any other professional service necessary for the planning, progress, or completion of an engineering service.

TEX. OCC. CODE ANN. § 1001.003(c). Within the practice of engineering, the term "engineering

survey includes any survey activity required to support the sound conception, planning, design,

8

construction, maintenance, or operation of an engineered project." *Id.* § 1001.003(a)(2). However, "[t]he term does not include the surveying of real property or other activity regulated under Chapter 1071." *Id.*

And Occupations Code Chapter 1071, as acknowledged by the parties, defines the term "professional surveying" as "the practice of land, boundary, or property surveying or other similar professional practices." TEX. OCC. CODE. ANN. § 1071.002(6). This term includes:

> (A) performing any service or work the adequate performance of which involves applying special knowledge of the principles of geodesy, mathematics, related applied and physical sciences, and relevant laws to the measurement or location of sites, points, lines, angles, elevations, natural features, and existing man-made works in the air, on the earth's surface, within underground workings, and on the beds of bodies of water to determine areas and volumes for:
>
> > (i)    locating real property boundaries;
> >
> > (ii)   platting and laying out land and subdivisions of land; or
> >
> > (iii)  preparing and perpetuating maps, record plats, field note records, easements, and real property descriptions that represent those surveys; and
>
> (B) consulting, investigating, evaluating, analyzing, planning, providing an expert surveying opinion or testimony, acquiring survey data, preparing technical reports, and mapping to the extent those acts are performed in connection with acts described by this subdivision.

*Id.* To determine whether any part of DCP's claims arise out of the provision of professional land surveying services, we look to its pleadings.[3] *TDIndustries, Inc. v. Citicorp N. Am., Inc.*, 378

---

[3] Atwell and DCP disagree as to which petition we should review: its first petition adding Atwell as a defendant or its live pleading when Atwell filed its motion to dismiss. DCP contends we should look to "the facts and claims set out in the first petition against the defendant in issue," i.e., its second amended petition. However, it cites no law supporting that assertion. Our duty as a transfer court is to "decide the case in accordance with the precedent of the transferor court." TEX. R. APP. P. 41.3. One Fourth Court of Appeals opinion (though a memorandum opinion) has stated that it considers the live pleading on file when the trial court considered the motion to dismiss. *See Studio E Architecture & Interiors, Inc. v. Lehmberg*, No. 04-19-00026-CV, 2019 WL 3229194, at *2 (Tex. App.—San Antonio Apr. 17, 2019, pet. denied) (mem. op.) (citing *Pelco Constr., Inc. v. Dannenbaum Eng'g Corp.*, 404 S.W.3d 48, 53 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Because we are obligated to decide the case in accordance with the precedent of the Fourth Court of Appeals, we look to the pleadings in DCP's sixth amended petition to determine the nature of its claim for certificate-of-merit purposes. TEX. R. APP. P. 41.3.

S.W.3d 1, 6 (Tex. App.—Fort Worth 2011, no pet.). DCP's negligence claim against Atwell relies on its allegations that Atwell designed the EPIC pipeline to cross and overlay DCP's existing pipeline, failed to clearly notate the presence of DCP's pipeline on its Alignment Sheets to warn contractors of dangerous construction conditions, and failed to stake key locations, including pipeline crossings, the project's right of way, and its centerline.

In light of DCP's pleadings, we conclude DCP's claims arise from Atwell's allegedly negligent provision of professional engineering services, not professional land surveying services. Viewed as a whole, DCP's pleadings implicate a professional engineer's education, training, and experience in designing and constructing a new pipeline, and allegedly doing so in a negligent manner, including various tasks associated with the pipeline's construction. *See TDIndustries*, 378 S.W.3d at 5; *cf. TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (collecting cases in which claims did not implicate a professional engineer's education, training, and experience). While DCP's claim includes allegations regarding "surveying" and "staking," those activities in context fall within the statutory definition of the practice of engineering. *See* TEX. OCC. CODE ANN. § 1001.003; *see also Whitaker*, 603 S.W.3d at 538. (the Occupations Code's definition of the practice of engineering is broad).

Atwell maintains that DCP's allegations implicate professional land surveying work, including references in the petition to "a reasonable and prudent surveyor" standard and industry customs "for surveyors" to stake certain points. But the language cited does not unambiguously refer to surveying work performable only by a professional land surveyor. Further, this language must be viewed in context of DCP's other allegations against Atwell, which clarify that its purportedly negligent engineering services incorporated deficient surveying and staking as part of the pipeline completion work. In other words, such activities fall in the "large shadow" of "the umbrella of practicing engineering." *Whitaker*, 603 S.W.3d at 538. Moreover, each allegedly

negligent act itself "need not constitute an exercise in the practice of engineering[; t]hey need only originate, stem, or result from the defendant engaging in such practice to fall within the ambit of § 150.002(a)." *Id.*; *accord Found. Assessment, Inc. v. O'Connor*, 426 S.W.3d 827, 834–35 (Tex. App.—Fort Worth 2014, pet. denied) (concluding certificate-of-merit requirement applied to claims arising from allegedly fraudulent statement in engineering report because defendants' provision of the report constituted the provision of professional services). Since the Occupations Code's definition encompasses all stages of the provision of the engineering service, including any "survey activity required to support the . . . construction . . . of an engineered project," Atwell's allegedly negligent work to that end—including staking—falls within the definition of the practice of engineering. TEX. OCC. CODE. ANN. § 1001.003(a)(2), (c)(12).

Furthermore, while Atwell argues that, in particular, "staking" of the "project right of way," the "centerline of EPIC's proposed pipeline," and the "crossings between pipelines" necessarily constitutes "surveying work"—i.e., professional land-surveying work—we cannot agree. Atwell cites no supporting authority for such a proposition and the plain language of Occupations Code § 1071.002(6) compels a different conclusion. Professional land surveying is defined to include: (A) performance of a survey for "(i) locating real property boundaries; (ii) platting and laying out land and subdivisions of land; or (iii) preparing and perpetuating maps, [etc.] that represent those surveys; and (B) consulting [and other acts] to the extent those acts are performed in connection with acts described by this subdivision." TEX. OCC. CODE. ANN. § 1071.002(6) Accordingly, staking operations performed in connection with a pipeline construction project may involve "surveying work," but such work involves neither "locating real property boundaries," nor "platting or laying out land and subdivisions," nor preparing documents for or engaging in other acts in connection with such work.

Because DCP's claims arise out of Atwell's provision of professional engineering services and not professional land surveying services, Mr. Amonsen's affidavit meets Chapter 150's certificate of merit requirement.[4] Accordingly, the trial court did not abuse its discretion by denying Atwell's motion to dismiss.[5]

## CONCLUSION

For the above reasons, we affirm the trial court's order denying Atwell's motion to dismiss.

LISA J. SOTO, Justice

January 26, 2024

Before Alley, C.J., Palafox and Soto, JJ.

---

[4] The purpose of the certificate is "to provide a basis for the trial court to determine merely that the plaintiff's claims are not frivolous and to thereby conclude that the plaintiff is entitled to proceed in the ordinary course to the next stages of litigation." *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 511 S.W.3d 743, 749 (Tex. App.—Corpus Christi–Edinburg 2015), *aff'd*, 520 S.W.3d 887 (Tex. 2017).

[5] Because we conclude the trial court did not abuse its discretion in denying Atwell's motion to dismiss, we do not reach its waiver or dismissal-with-prejudice issues.